**AFFIRM; and Opinion Filed November 12, 2013.**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-13-00336-CV**

## IN THE MATTER OF J.T., A CHILD

**On Appeal from the 305th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. JD-75197-X**

## MEMORANDUM OPINION
Before Justices O'Neill, Lang-Miers, and Evans
Opinion by Justice Lang-Miers

J.T. appeals from the trial court's order transferring him from the Texas Juvenile Justice Department to the Texas Department of Criminal Justice to complete his 7-year determinate sentence. We issue this memorandum opinion pursuant to Texas Rule of Appellate Procedure 47.4 because the law to be applied in the case is settled. We affirm the trial court's order.

The trial court declared J.T. a child engaged in delinquent conduct for committing aggravated assault with a deadly weapon. In March 2011, when J.T. was 16 years old, he stabbed a stranger with a knife three times in the torso. The victim was African-American, and J.T. said the victim "kept provoking [J.T.] with curse words and denigrating statements about Mexicans." J.T. said he attacked the victim to keep from looking "like a punk" to the others standing around. J.T. had a history of carrying knives and was associated with the Pleasant Grove Vatos gang.

The court committed J.T. to the Texas Youth Commission, now the TJJD, in April 2011 to serve the 7-year determinate sentence with a possible transfer to the TDCJ. In January 2013,

the TJJD referred J.T. to the trial court and recommended that the trial court transfer J.T. to the TDCJ to complete his sentence. After a hearing, the trial court ordered J.T.'s transfer to the TDCJ. On appeal, J.T. argues that the trial court abused its discretion by ordering his transfer. The State argues that the evidence supports the trial court's decision. We agree with the State.

We review a trial court's decision to transfer a juvenile from the TJJD to the TDCJ for an abuse of discretion. *In re J.L.C.*, 160 S.W.3d 312, 313 (Tex. App.—Dallas 2005, no pet.). In making a determination whether to release a juvenile from the TJJD or transfer him to the TDCJ,

> the court may consider the experiences and character of the person before and after commitment to the youth commission, the nature of the penal offense that the person was found to have committed and the manner in which the offense was committed, the abilities of the person to contribute to society, the protection of the victim of the offense or any member of the victim's family, the recommendations of the youth commission and prosecuting attorney, the best interests of the person, and any other factor relevant to the issue to be decided.

TEX. FAM. CODE ANN. § 54.11(k) (West Supp. 2013). The court may also consider reports from probation officers, professional court employees, professional consultants and employees of the juvenile justice department, as well as witness testimony. *Id*. § 54.11(d). In our review, we look at the entire record to determine if the court acted without reference to any guiding rules or principles. *In re J.L.C.*, 160 S.W.3d at 313. If some evidence supports the court's decision, there is no abuse of discretion. *Id*.

At J.T.'s transfer hearing, the court heard testimony from Leonard Cucolo, court liaison for the TJJD, and reviewed Cucolo's report of J.T.'s progress while at the TJJD. The evidence showed that J.T. received his GED while at the TJJD and completed 18 of 22 credits toward his high school diploma. But it also showed that J.T. was once caught cheating and "smashed a calculator [worth] $110.00." The evidence showed that J.T. was smart and performed well academically, but it also showed that he did not complete his work and argued with and cursed at his teachers. His teachers reported that he was "showing some improvement in his foundational

skills to get along with others, respect authority, and follow directions and control his anger and aggression," but they also said J.T. seemed to seek attention through his behavior and struggled with following rules.

Cucolo explained the factors the TJJD considers when it decides to recommend transfer of a juvenile to the TDCJ and testified that J.T. met all of them. The factors include age (at least 16 years old), time in a high restriction facility (at least 6 months), and behavior (engaged in at least 1 new offense). Cucolo testified that J.T. had been at the TJJD for about 20 months and was in a high restriction facility the entire time. He also testified that J.T. had 68 incidents of misbehavior and was referred to the security unit 32 times and admitted 21 times. J.T. committed 20 major rule violations, which Cucolo defined as offenses for which J.T. could have been arrested if he was not in the TJJD. Several of those major rule violations were assaults on other juveniles and staff members that caused bodily injury to the victims; sexual misconduct, including masturbating in front of female staff members; and ordering assaults on others at the TJJD out of retaliation. On "numerous" occasions J.T. "had to be sprayed with OC spray . . . to get him to stop his assaultive behaviors[.]"

Cucolo's report showed that J.T. joined a gang after he was committed to the TJJD and continued to participate in gang-related activity, such as racially based dorm fights, despite programs like individual and group counseling, anger management and aggression therapy, and other aggressive conduct programs that were offered to him. Cucolo said J.T. participated in the programs but "failed to really make the necessary changes." Cucolo admitted that J.T. was not offered any "specific gang intervention program services" at the TJJD. Cucolo testified that J.T. was told about the hearing to determine whether to transfer him to the TDCJ and knew what types of behavior would lead to a transfer. At one point J.T. said "he didn't care about going to the pen."

Cucolo's report stated that some of the programs provided to J.T. assessed his risk for recidivism and ability to assimilate into the community if released. J.T. was assessed as having a "high need for Capital & Serious Violent Offender Treatment," but he was unsuccessfully discharged from that program. J.T. was also unsuccessfully discharged from the program Aggression Replacement Training. And he was referred to a specialized secure unit due to repeated assaults he committed. J.T.'s "only significant improvement in his risk factors" was in education and "his amenability to treatment," which the report described as "a recent and tenuous change." The report suggested that J.T. was "a high risk for aggressive behavior and parole failure in the community."

Having reviewed the record in light of the factors the trial court considers in making its determination whether to transfer a juvenile to the TDCJ, we conclude that there is some evidence to support the trial court's decision to transfer J.T. to the TDCJ. As a result, we further conclude that the trial court did not abuse its discretion when it ordered J.T. transferred from the TJJD to the TDCJ to complete the remainder of his 7-year determinate sentence. We resolve J.T.'s sole issue against him.

We affirm the trial court's January 23, 2013 order transferring J.T. from the TJJD to the TDCJ to complete his 7-year determinate sentence.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

130336F.P05

–4–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE MATTER OF J.T., A CHILD

No. 05-13-00336-CV

On Appeal from the 305th Judicial District Court, Dallas County, Texas
Trial Court Cause No. JD-75197-X.
Opinion delivered by Justice Lang-Miers, Justices O'Neill and Evans participating.


   In accordance with this Court's opinion of this date, the order of the trial court is **AFFIRMED**.


Judgment entered this 12th day of November, 2013.


/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE